New England Telephone and Telegraph Company *vs.* Thomas A. Kennelly, *Public Utility Adm'r.*

MAY 12, 1951.

Present: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

O'CONNELL, J. This case is before us on the appeal of New England Telephone and Telegraph Company, hereinafter sometimes referred to as the company, from the decision and order No. 6539 of the public utility administrator, hereinafter called the administrator, denying and dismissing the schedule of rates filed by the company on March 1, 1950 to become effective April 1, 1950.

On March 1, 1950, pursuant to general laws 1938, chapter 122, §45, as amended, the company filed a revised schedule increasing certain of its rates, tolls and charges for intrastate telephone service in Rhode Island, to become effective April 1, 1950. Such revised schedule was designed to increase the company's revenue from its intrastate operations and would have become fully collectible on April 1, 1950 by operation of law, without any action or approval of the regulatory authority.

On March 15, 1950 the administrator issued order No. 6478, wherein he recited that after making preliminary investigation thereof he believed the public interest required a more thorough and complete investigation as to the reasonableness and necessity of such proposed in-

creases. That order reads in part as follows: "That the Public Utility Administrator, on his own motion, does hereby suspend the effective date of the tariff filing made by the New England Telephone and Telegraph Company under date of March 1, 1950 * * * That the Public Utility Administrator will immediately proceed to set a date for a public hearing on the reasonableness and necessity of said proposed tariff, and he will cause the New England Telephone and Telegraph Company and all other interested parties to be notified of the date of said hearing, in accordance with the provisions of Section 17 of Chapter 122 of the General Laws of Rhode Island, 1938, as amended." Pursuant to such order the administrator on the same date served upon the company notice of a hearing on March 30, 1950 and requested the company to appear and present such evidence and arguments as it might deem proper in the premises.

On the day set for the hearing special counsel duly authorized to represent the public interest entered his appearance and filed a motion to dismiss the proceedings and also a motion that the administrator "limit the evidence * * * to such evidence of new and changed conditions which might postdate the decision and order of the Public Utility Hearing Board in Docket No. A-29." After arguments on these motions and without any evidence being introduced, the administrator reserved decision, requested briefs and recessed the hearing.

Briefs were filed and thereafter pursuant to notice the proceedings were reconvened on June 26, 1950. The administrator then incorporated into the record an opinion from the attorney general in which it was stated: "We are of the opinion that the Company should not, at this point, be allowed to again submit evidence on the same issues and facts which were before the Appeal Board last year. * * * We are therefore led to the conclusion that the motion to limit the evidence should be granted. * * * It seems to us, however, that any petitioner in a situa-

tion such as is that of the company in this hearing would be entitled to add to the record at hand *such pertinent factual data as was not considered by the Board for the reason that the circumstances in question had not at that time arisen."* (italics ours) The administrator, adopting the above opinion of the attorney general, granted, over the objection of the company, the motion to limit the evidence to the extent indicated in such opinion and denied the motion to dismiss the proceedings.

Thereafter the company offered to prove that the rates filed March 1, 1950 were just and reasonable. This offer included evidence of the company's actual operating results for 1949 for a period of five months ending May 31, 1950 and for the period of twelve months ending the same date, and current estimates for 1950 and 1951 not presented in the earlier cases. The company further offered to prove that the operating results for the periods above referred to included no unusual or nonrecurring expenses, and that after adjusting the twelve months' experience to give effect to existing rates, the results for both periods were representative of those reasonably to be expected throughout the years 1950 and 1951. The evidence offered included testimony as to the amount of the company's plant investment used in rendering intrastate service in Rhode Island; testimony of experts as to the borrowing cost of money to the company *and a fair return on its investment;* the amount of expenses and income under existing rates; and the estimated income that would be derived from the rates filed March 1, 1950.

With the exception of evidence relating to the revenues which would be derived under the proposed rates, this evidence was all excluded. Thereafter certain testimony was introduced to show that three items of expense, namely, pension costs and two different taxes, would have cost $185,700 more in 1950 than was allowed by the public utility hearing board (assuming that the wage rates and number of employees were at the figure estimated by that

board) by reason of increased rates of taxes and increased benefits under the pension plan.

On September 15, 1950 the administrator entered the following order: "That the tariff filing made by the New England Telephone and Telegraph Company with the Public Utility Administrator of Rhode Island on March 1, 1950, be and the same is hereby denied and dismissed." In his decision denying the instant application for increased rates, the administrator pointed out that the tariff filing of March 1, 1950 postdated by a period of only two and one half months a decision and order of the public utility hearing board, hereinafter called the board, which was entered on December 15, 1949 and which allowed the company to increase its revenues in the approximate amount of $1,900,000 annually; that such order was rendered after prolonged and involved hearings during which the testimony of telephone experts, both for the state and the company, was placed on record; that in rendering its decision the board disallowed certain expense items claimed by the company and established a rate base below that set by the company's witnesses; and that it found a rate of return of 6 per cent on the company's net investment to be just and reasonable in place of the requested 7 per cent.

The administrator further pointed out that in spite of the fact that the company failed to receive rates which it had heretofore claimed were necessary to maintain successful operations within this state, it elected not to appeal the decision of the board to the supreme court of Rhode Island under the procedure provided by law, but apparently chose to accept the rates fixed by order of the board. The administrator concluded that considering the background of the company's previous attempts to secure increased rates and charges, and giving consideration to the tariff filing of March 1, 1950 whereby the company was attempting to renew its claim for a 7 per cent rate of return, the request for increased rates as set forth in the

instant filing should not be granted, because it was the evident intent of the board by its decision of December 15, 1949 that the rates fixed therein would be fair and reasonable *for an indeterminate period in the future* and not merely for the space of a few months.

With reference to the additional proven expense of $185,700, the administrator observed that the impact which these increased expense items might have on the company's rate of return on its Rhode Island net investment would amount to approximately three tenths of one per cent, and that in view of the relatively short period of time which had elapsed since the board had issued its order fixing a new rate schedule for the company within this state, and the minor nature of these increased expense items, a revision of the present telephone tariff at this time is unwarranted and would not be in accord with the public interest.

The administrator expressed the belief that when the board permitted the company to revise its telephone tariffs for Rhode Island subscribers it did not fix a tariff schedule so rigid that minor increases in expense items could not be absorbed without serious consequences to the company. He expressed the further belief that to authorize a tariff revision on the basis of a minor change in a few expense items incurred during recent months would be creating a policy whereby other utilities might petition for revisions to periodically compensate themselves for minor changes in business conditions, and that the effect of such a policy would ultimately tend to the establishment of a constantly fluctuating tariff structure, a result which would be confusing both to the utility and to the rate-paying public.

The company contends under its appeal that the administrator made the following erroneous rulings: first, in granting the motion to limit the evidence; second, in excluding evidence offered by the company to show that the rates filed March 1, 1950 were reasonable and neces-

sary; and third, in denying and dismissing the application for new rates filed March 1, 1950.

We are of the opinion that the basic issue involved is whether by reason of the new filing of March 1, 1950 the administrator is obligated by law to rehear and redetermine all those issues which were decided by the board on December 15, 1949 and to admit new evidence, as to the reasonableness or unreasonableness of existing rates, which was available and could have been presented at the earlier hearing.

The company contends that as the statute limiting the power to fix its own rates contains no limitation upon the interval which must elapse between a filing of proposed changes or a determination of the reasonableness of a change and a filing of new changes, the company is entitled to file new schedules *at any time it may choose,* and that the administrator is required by statute to hear and determine all the issues involved thereunder through the medium of a public hearing.

On the other hand, the administrator contends that the company might under such a claim of right file successive applications, all of which might be pending for decision at the same time resulting in prolonged, vexatious and costly litigation, together with uncertainty and confusion in the rate structure. He further contends that since a final determination as to the rate structure had been made by the board only two and one half months before the filing of the tariff schedules here under consideration, the company is precluded from pursuing its application for the adoption of new rates *until a reasonable time had elapsed* since such determination by the board; that such new filing is barred by reason of the application of the doctrine of res judicata or a doctrine akin thereto and also by reason of the application of the principle of estoppel.

The administrator argues further that the contention of the company that it can file new schedules *at any time* amounts to a claim that a decision by the administrator

or by the board fixes rates only as of the moment of the decision, whereas by the great weight of authority rates so fixed are intended to apply for *an indeterminate period into the future or at least a reasonable time into the future.* He contends that if the ultimate issue of rate making was to fix reasonable rates only at the time of the rate order, it would follow that at any moment thereafter a new issue would be raised by any new rate filing. If on the other hand a rate order did apply for a reasonable future period, it would follow that barring *new and unforeseen* developments of an extreme nature, an immediate new rate filing would raise the same issue as determined by the previous decision.

In support of his contention that existing rates were fixed for some time into the future by the decision of the board on December 15, 1949, the administrator quotes from such decision as follows: "We must determine what rates will enable the Company to earn a fair return during the years just ahead *when the prescribed rates will be in operation.*" (italics ours)

It seems clear to us that the rate order of the board under date of December 15, 1949 could not relate to a period of time prior to that date, but must relate either to the exact time of the order or to some indeterminate time into the future. If only the time of the rate order is the time for which reasonable rates are fixed, it must be concluded that a hearing lasting many months, costing thousands of dollars, and involving voluminous testimony and exhibits, is designed to discover what is a reasonable rate at a given moment of time. It would then follow that upon the ascertainment of this reasonable rate by a regulatory agency such finding becomes meaningless as to any period, however long or short, in the future. That the company recognized that the rate-making process was designed to operate on the economic and financial experience in the foreseeable future is evidenced by the fact that it sought in the hearing before the administrator

to offer estimates of its expected operating results for the years 1950 and 1951.

We are of the opinion that the decisions of rate-making bodies are essentially predictions into the future. It is well recognized that rates established must provide not only a reasonable rate of return at the time of the investigation but also for a reasonable time in the immediate future. *East Ohio Gas Co.* v. *Public Utilities Comm'n,* 133 Ohio St. 212; *Atlantic City Sewerage Co.* v. *Board of Public Utility Comm'rs,* 128 N.J.L. 359. In *McCardle* v. *Indianapolis Water Co.,* 272 U. S. 400, the court said at page 408: "In every confiscation case, the future as well as the present must be regarded. It must be determined whether the rates complained of are yielding and will yield * * * a sum sufficient to constitute just compensation for the use of the property employed to furnish the service; that is, a *reasonable rate of return* on the value of the property at the time of the investigation and *for a reasonable time in the immediate future."* (italics ours)   See also cases therein cited.

In *Los Angeles Gas & Electric Corp.* v. *Railroad Comm'n of California,* 289 U. S. 287, the court stated at page 311: "The determination of present value is not an end in itself. Its purpose is to afford ground for prediction as to the future. It is to make possible an 'intelligent forecast of probable future values' in order that the validity of rates for the future may be determined."

In *Indianapolis Water Co.* v. *McCart,* 89 F.2d 522 (7th Cir. 1937), the court at page 526 specifically recognized the problem of relitigation of rate cases in the following language: "It is recognized that values as applied to utility properties experience marked fluctuations from time to time. The purpose to be achieved in a determination of value is to give recognition to any increase or decrease in values at the time under consideration in order to reach a fair valuation not only for the moment but for the reasonably near future. A redetermination of values

and rates cannot be had at frequent intervals, and consequently a determination that gives full recognition to the immediate future years is to be sought."

We agree with the great weight of authority that under the rate-making process rates are fixed not only for the moment but for a reasonable length of time in the future. We are of the opinion that ordinarily time alone can satisfactorily demonstrate in a case like this whether or not the rates previously established by the board will prove so unremunerative as to be confiscatory in the sense in which that term has been defined in rate-making cases.

We are also of the opinion from an examination of the transcript that the filing by the company of a new schedule of rates on March 1, 1950, which was intended to take effect April 1, 1950, was in reality an attempt by the company to set aside the decision of the board rendered December 15, 1949, which clearly contemplated that the rates fixed by it on that date should continue for a reasonable time into the future. Much of the testimony offered by the company at the instant hearing before the administrator was presented or was available and could have been presented before the board. The latter found and fixed a rate of return of 6 per cent as reasonable instead of the rate of 7 per cent requested by the company. The company did not appeal from that decision but within two and one half months from the date thereof it sought in effect to relitigate before the administrator the question of such rate return.

In these circumstances we are of the opinion that the administrator did not err in granting the motion to limit the evidence, in excluding certain evidence offered by the company, and in denying and dismissing the tariff filing of March 1, 1950. In our judgment a reasonable period of time had not elapsed between the decision of the board on December 15, 1949 and the new filing on March 1, 1950 to demonstrate satisfactorily whether or not the rates established by the board would prove to be confiscatory.

Whether a sufficient time has now elapsed to permit a new filing is not before us for determination and consequently we express no opinion thereon.

The appeal of the petitioner is denied and dismissed, the final order of the administrator appealed from is affirmed, and the papers in the case are ordered sent back to the respondent administrator.

*Swan, Keeney & Smith, Eugene J. Phillips, Marshall Swan, Charles Ryan,* of Boston, for petitioner.

*William E. Powers,* Attorney General, *Abraham Belilove,* Special Counsel, *William E. McCabe,* City Solicitor, *Harry Goldstein,* Assistant City Solicitor.